FILED

2022 Mar-30  AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| BRENTON SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:20-cv-01343-HNJ |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Brenton Smith seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for supplemental security income benefits. (Doc. 1).  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 12).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii),

416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11ᵗʰ Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11ᵗʰ Cir. 1997))).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* § 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 416.912(b)(3), 416.920(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* § 416.920(a)(4)(v); *see also* 20 C.F.R.

§ 416.920(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.  20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (citations omitted).  Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Smith, age 47 at the time of the ALJ hearing, protectively filed an application for supplemental security income benefits on March 22, 2018, alleging disability beginning August 16, 2016.  (Tr. 162–70).  The Commissioner denied Smith's claims, and Smith

4

timely filed a request for a hearing on August 6, 2018.  (Tr. 90–94, 97–99).  The ALJ

held a hearing on October 16, 2019, (tr. 15), and issued an opinion on November 25,

2019, denying Smith's claims.  (Tr. 7–25).

Applying the five-step sequential process, the ALJ found at step one that Smith

did not engage in substantial gainful activity after February 27, 2018, his application

date.  (Tr. 17).[2]  At step two, the ALJ found Smith exhibited the severe impairments of

"back degenerative disc disease, bilateral knee osteoarthritis/degenerative joint disease,

a large left side abdominal hernia, and obesity . . . ."  (Tr. 17–19).  At step three, the

ALJ found that Smith's impairments, or combination of impairments, did not meet or

medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (Tr. 19–20).

Next, the ALJ found that Smith exhibited the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except with
> occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds[;]
> occasional balancing and stooping; no kneeling, crouching, or crawling; and he
> must avoid all hazards such as open flames, unprotected heights, and dangerous
> moving machinery.

(Tr. 20).

At step four, the ALJ determined Smith had no past relevant work.  (Tr. 23).

However, at step five, the ALJ determined Smith could perform a significant number

---

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has
an SSI application on file."  *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015)
(per curiam) (citing 20 C.F.R. §§ 416.202–03).

of other jobs in the national economy considering his age, education, work experience, and RFC. (Tr. 24–25). Accordingly, the ALJ determined that Smith has not suffered a disability, as defined by the Social Security Act, since February 27, 2018. (Tr. 25).

Smith timely requested review of the ALJ's decision. (Tr. 160–61). On August 19, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1–6). On September 9, 2020, Smith filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Smith argues the ALJ failed to properly evaluate his subjective symptoms and their effect on his ability to work. For the reasons discussed below, the undersigned concludes that contention does not warrant reversal.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from the condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021) (per curiam). A claimant's testimony coupled with evidence that meets the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, and republished

October 25, 2017, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Smith testified that he cannot hold a full-time job because he suffers recurring hernias. (Tr. 41). Since 2014 Smith has undergone five hernia surgeries. (*Id.*). Smith's last hernia surgery occurred February 2018. (Tr. 42–43). After the surgery, Smith suffered another hernia that has not been treated. (Tr. 43). Smith stated he can lift half

a gallon of milk with his condition. (Tr. 43–44). Lifting anything heavier causes him pain. (Tr. 44). Smith did state however, that he could possibly lift half a gallon of milk in each hand. (*Id.*). Smith further explained that he cannot crouch and has difficulty kneeling down. (*Id.*). He also suffers lightheadedness for 5-6 seconds when he stands up too fast. (Tr. 44–45). In addition, Smith cannot lift his arms above his head for too long. (Tr. 45). Sometimes he experiences a tingling sensation in his right arm. (*Id.*). Smith discussed he would have problems squatting, lifting, and standing if offered a job. (Tr. 46).

In his Function Report, Smith stated he watches television and sits on his front porch from the time he wakes up until he goes to bed. (Tr. 209). He also feeds his pets. (Tr. 210). Smith's condition affects his ability to sleep but does not affect his ability to care for himself. (*Id.*). Regarding meals, Smith prepares sandwiches, frozen dinners, and canned foods daily. (Tr. 211). His condition does not allow him to stand for long periods of time to cook. (*Id.*). Smith also does his own laundry. (*Id.*). When Smith leaves his residence, he either drives or rides in a car. (Tr. 212). Smith has no issues when shopping for food, which he does once or twice a week. (*Id.*). He further explained he shops for about 30 minutes. (*Id.*).

Smith listed that his condition limits his ability to lift, squat, bend, stand, reach, kneel, and climb stairs. (Tr. 214). Smith averred he can only lift 8 pounds and could walk 100 yards before needing rest. (*Id.*). He then needs about 30 minutes of rest before he can resume walking again. (*Id.*).

Smith's friend Jimmy Tolleson filed a Third Party Function Report as well.  (Tr. 190).   Tolleson's Report essentially mimics Smith's Function Report with a few exceptions.  Tolleson explained Smith can no longer walk to pick up cans for money. (Tr. 195).  Tolleson further explained Smith can walk a few hundred yards before needing rest, and Smith only needs a few minutes of rest before he can resume walking. (*Id.*).  Tolleson also remarked Smith has undergone several surgeries, but nothing has improved Smith's condition.  (Tr. 197).  He further declares Smith cannot pick up anything of "medium weight" or bend over.  (*Id.*).  Lastly, Tolleson has observed that "[d]riving in a car for . . . over 30 minute[s]" and standing causes Smith pain.  (*Id.*).

The ALJ found that Sims's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but concluded that Smith's "statements concerning the intensity, persistence, and limiting effects" of his impairments were not consistent with the objective medical evidence in the record.  (Tr. 21).  The ALJ explained "the records show no postoperative complication following [Smith's] last February 2018 open incisional hernia repair . . . ."  (*Id.*).  The ALJ further mentioned that at Smith's "four-week post-operative visit in March 2018," Cynthia Monk, M.D., noted that "[Smith] was doing well with only intermittent pain . . . ."  (*Id.*). Then in May 2018, Smith exhibited no palpable hernia, and he received advisement "to increase his activity as tolerated with no heavy lifting greater than 50 pounds" and start a light exercise program.  (*Id.*).

At a consultative examination in May 2018, Smith complained of "back and

bilateral knee pain but he acknowledged having no diagnostic workup for such conditions." (*Id.*). Smith's abdomen did exhibit a scar, but he had no "organomegaly or masses." (Tr. 22). The ALJ noted the other results from the consultative examination included:

> [f]inger to nose testing, Rhomberg, heel-knee-shin testing were normal. Deep tendon reflexes were normal and he was able to heel, toe, tandem walk, and stoop and rise on the knees. Grip and bicep testing was normal. No sensory defect was detected. Straight leg raising test was negative bilaterally in the sitting and supine position. Grip strength, on a scale of 5, was 5/5 in all muscle groups. There was no edema, dermatitis, ulcerations, or varicosities noted. He had the ability to make fists, oppose thumb to fingers, tie shoelaces, pick up small objects, button, hold a glass, and turn a doorknob. He ambulated with a normal gait and without any assistive devices. Examination of the lower extremities revealed crepitus in both knees, left worse than the right, but full range of motion. Moreover, pulses remained equal and normal. He also maintained normal findings in relation to range of motion of the cervical spine, lumbar spine, thoracic spine, hips, knees, ankles, shoulders, elbows, and wrists. X-ray of the left knee showed osteoarthritis and imaging of the thoracic spine showed only minimal degenerative disc disease . . . .

(*Id.*).

The ALJ also discussed Smith seeking treatment in July 2019, and "[a]side from a BMI of 33.0-33.9 and a scar from his prior colectomy, all other aspects of the abdomen exam was within normal limits with no tenderness, hepatic enlargement, or spleen enlargement." (*Id.*). The laboratory studies also found no significant abnormalities. (*Id.*).

Then in August 2019, Smith received a post-colectomy gastrointestinal exam which portrayed "a left sided incisional hernia and . . . abdominal tenderness." (*Id.*). Smith also received a new diagnosis of osteoarthritis of the bilateral knees. (*Id.*).

However, "no other treatment modalities were sought, recommended, or anticipated for such condition (i.e. surgery, physical therapy, injection therapy, pain management, medications (NSAIDs), medical need for an assistive device, etc.)." (*Id.*). "Other than left knee arthritis, all musculoskeletal systems were normal." (*Id.*).

The ALJ also noted that Smith could "perform[] a variety of activities such as performing his own personal care needs, preparing simple meals, doing laundry, driving, going out alone, shopping in stores, paying bills, counting change, and watching television and movies," which do not align with his allegations of disabling symptoms. (*Id.*).

Lastly, the ALJ considered medical opinions and prior administrative findings. "State Agency medical consultant Dr. Hogan concluded that the claimant was capable of light work with postural and environmental limitations," but the ALJ only found the opinion partially persuasive because Dr. Hogan did not have the opportunity to consider new evidence received at the hearing. (Tr. 23). Next, the ALJ deemed persuasive "State Agency medical consultant Dr. Estock's opinion that [Smith's] learning disorder is non-severe." (*Id.*). The ALJ believed the record which "show[ed] [Smith] does not have any mental complaints emotionally or cognitively" supported Dr. Estock's opinion. (*Id.*).

Substantial medical evidence in the record supports the ALJ's findings. On June 4, 2014, Smith presented at Marshall Medical Center South complaining of abdominal pain. (Tr. 443). Smith stated his abdominal pain commenced two days prior to his visit

and progressively worsened.  (*Id.*).  During a physical examination, Dr. Monk reported Smith's abdomen as soft, nondistended, and "tender to palpation in the periumbilical region and in the left lower quadrant." (Tr. 444).  Smith did not display any abdominal guarding.  (*Id.*).  Dr. Monk found Smith manifested "[s]igmoid diverticulitis with perforation." (*Id.*).  Dr. Monk hoped that Smith's condition could be treated with "IV antibiotics," but she told Smith if the condition worsens, he may need a "laparotomy with [a] temporary colostomy." (*Id.*).  Dr. Monk further explained in her assessment that given the perforation, Smith would require an eventual "sigmoid colectomy." (*Id.*).

On June 18, 2014, Dr. Monk performed a "laparoscopy with lysis of adhesions and drainage of intraabdominal abscess" on Smith.  (Tr. 434).  The operation report stated Smith had a preoperative diagnosis of "[d]iverticulitis with intraabdominal abscess with a small bowel obstruction." (*Id.*).  During the procedure, "[a] colostomy bag was placed" on Smith.  (Tr. 435).  Afterwards, he "was . . . transferred to the recovery area in stable condition." (*Id.*).

On July 21, 2014, Smith checked into the emergency room at Marshall complaining of pain in both the right and left lower quadrant of his abdomen.  (Tr. 552).  At first, Smith rated his pain a "10/10," but he later rated it a seven.  (Tr. 552–53).  During a physical exam, Smith exhibited diffused tenderness in his abdomen and a normal range of motion in his extremities.  (Tr. 553).  He also demonstrated no motor or sensory deficit.  (*Id.*).  Smith received a Norco prescription for his pain.  (Tr. 556, 561).  Dr. Monk also examined Smith that day and found his colostomy bag had

malfunctioned and began leaking. (Tr. 433, 506–07). Smith reported experiencing pain and burning at the colostomy site, but he had minimal redness and swelling. (Tr. 433). On July 24, 2014, Smith underwent a colostomy revision and received a new colostomy bag. (Tr. 425–26).

On August 11, 2014, Smith still complained of pain in the lower left quadrant of his abdomen, but he stated his pain, overall, had improved. (Tr. 420). He further expressed that pain medication did not help much. (*Id.*). After performing a physical examination of Smith, Dr. Monk reported he exhibited a soft abdomen and his colostomy bag functioned well. (*Id.*).

On September 3, 2014, Smith explained in a follow-up visit with Dr. Monk that he had not been feeling much better and had been attempting to walk daily. (Tr. 418). Smith also reported no issues with his colostomy bag. (*Id.*). Dr. Monk noted Smith exhibited a stable condition and his colostomy bag still functioned well. (*Id.*).

On September 10, 2014, Smith checked into the emergency room at Marshall and complained of experiencing non-radiating intermittent abdominal pain and burning at the "colostomy site." (Tr. 543). He rated his pain a seven. (544). Smith also noted nothing relieved or worsened the pain. (Tr. 543). During a physical exam of Smith's abdomen, the emergency room personnel described it as soft, and Smith exhibited tenderness in the right and left lower quadrant. (Tr. 544). However, they found no organomegaly or mass. (*Id.*). Smith also appeared to demonstrate a normal range of motion in his extremities and no motor or sensory deficit. (*Id.*). Smith received

Hydrocodone for his pain.  (Tr. 544–45).

On September 22, 2014, Smith exhibited a "soft, nondistended, nontender" abdomen with no hernias.  (Tr. 413).  On September 24, 2014, Smith denied experiencing much abdominal pain, and Dr. Monk described Smith's abdomen as soft and nondistended.  (Tr. 389–390, 534–35).  On September 25, 2014, Dr. Monk performed a "[l]aparoscopic sigmoid colectomy" and removed Smith's colostomy bag.  (Tr. 371, 377–78, 533, 541–42).  Smith tolerated the procedure well and left the operating room in stable condition.  (Tr. 371, 378, 533).  Upon his discharge on October 2, 2014, Smith received instruction not to do any heavy lifting.  (Tr. 371).

On October 9, 2014, Dr. Monk reported Smith's incision had healed well with no redness, swelling, or drainage.  (Tr. 374).  She further described Smith's condition as stable.  (*Id.*).  On October 21, 2014, Smith stated he still felt sore when he coughed or sneezed.  (Tr. 373).  Dr. Monk noticed Smith had a soft, nondistended, and nontender abdomen.  (*Id.*).  She further reported Smith's condition as stable.  (*Id.*).

On November 25, 2014, Dr. Monk diagnosed Smith with a large hernia in the left lower quadrant of his abdomen where he previously had his colostomy bag.  (Tr. 370).

On December 7, 2014, Smith complained of moderate non-radiating left knee pain.  (Tr. 502).  Smith stated nothing relieved the pain and it worsened when he sat, stood, or walked.  (*Id.*).  Emergency room personnel at Marshall explained Smith had mild tenderness and swelling in his left knee.  (Tr. 503).  Smith also exhibited a limited

range of motion and had a limp.  (*Id.*).  Smith underwent an x-ray exam that displayed minimal degenerative changes.  (Tr. 501, 503–04).  Smith received instruction to apply ice intermittently and elevate his knee above chest level.  (Tr. 504).  He also received a prescription for over-the-counter Motrin.  (*Id.*).

On January 20, 2015, Smith stated he felt better when he kept his abdominal "wrapped up," and his hernia continued to grow preventing him from any physical labor.  (Tr. 367, 491).  Dr. Monk re-checked Smith's hernia and scheduled a hernia repair.  (Tr. 367–69, 491–93).

On February 11, 2015, Dr. Monk stated Smith underwent two incisional hernias: "[one] in the previous left lower quadrant . . . and [one] in the right lower quadrant . . . ."  (Tr. 245, 354).  Smith underwent "[l]aparoscopic incisional hernia repair" that same day and "was . . . transferred to the recovery room in stable condition."  (Tr. 245–46, 354–55).  On February 16, 2015, the hospital discharged Smith .  (Tr. 244, 357).  In her discharge summary, Dr. Monk reported Smith's "pain seemed to be controlled with p.o. medication, and he was tolerating p.o."  (*Id.*).  Smith received a prescription for a Norco, Ibuprofen, Flexeril, and Phenergan at the time of his discharge.  (Tr. 244, 247–48, 357).  Dr. Monk further stated she sent Smith home with "Bactrim given [Smith's] history of abdominal surgery and the fact that there was a trace amount of erythema of the skin during his admission."  (Tr. 244).

On February 23, 2015, Smith exhibited a stable condition, and his incision had healed well with minimal swelling.  (Tr. 353).  Dr. Monk advised Smith to wear an

abdominal "binder as needed" and not to lift more than ten pounds. (*Id.*). On April 1, 2015, Smith stated he suffered pain if he did not wear his support belt. (Tr. 352). Dr. Monk found Smith had no obvious hernia, but he exhibited muscle laxity in his left abdominal wall. (*Id.*). She recommended Smith try Ibuprofen for any pain he might experience. (*Id.*). Smith, otherwise, demonstrated a stable condition. (*Id.*).

On July 1, 2015, Smith complained of frequent loose bowels and pain in his abdomen. (Tr. 349). He stated wearing a "low back belt around his abdomen" helped his abdominal pain. (*Id.*). Dr. Monk documented Smith still exhibited muscle laxity in his left abdominal wall, but he had no obvious fascial defect. (Tr. 351). He also still maintained a stable condition. (*Id.*). Dr. Monk reported Smith should do no heavy lifting. (Tr. 351).

On August 10, 2015, Smith presented to have abdominal pain in his lower left quadrant, but it "[felt] better when he [kept] it wrapped." (Tr. 342). Dr. Monk explained Smith portrayed no increase in abdominal mass, but he possibly suffered another hernia. (Tr. 344). She could not render a full assessment during the physical examination, and Smith stated he could not afford a CT scan. (*Id.*). Dr. Monk recommended Smith keep wearing his abdominal binder. (*Id.*).

On September 21, 2015, Smith stated he suffered lower left quadrant abdominal pain if he did not wear his abdominal binder. (Tr. 339). At that time, Dr. Monk described Smith's abdomen as "soft, nondistended, [and] nontender." (Tr. 341). Smith did have swelling in the lower left quadrant of his abdomen though. (*Id.*). Dr. Monk

recommended Smith continue to wear his binder and not partake in any heavy lifting. (*Id.*).

On December 22, 2015, Smith exhibited a large hernia where he previously had his colostomy bag. (Tr. 338). Smith did not want to have a CT scan or hernia repair performed due to his finances. (*Id.*). Dr. Monk instructed Smith not to participate in any strenuous activity or heavy lifting. (*Id.*). On March 29, 2016, Smith complained of pain in the area of his hernia, mostly with prolonged standing or heavy lifting. (Tr. 333). Dr. Monk wanted Smith to continue taking nonsteroidal anti-inflammatory drugs for his pain and advised him to not lift more than 20 pounds. (Tr. 335).

In April 2016, Dr. Monk wrote a letter and stated:

> Brenton Smith became a patient of mine when he presented to the ER and [Marshall Medical Center South] in 2014. He has suffered tremendous physical illness with prolonged inpatient therapy hospitalizations for perforated diverticulitis with multiple intraabdominal abscess requiring several procedures and [an] eventual colectomy. He has had a colostomy and then reversal of this and now suffers from a large recurrent abdominal wall hernia that is becoming worse with time. I have restricted him to no heavy lifting greater than ten pounds and have asked him to wear an abdominal binder as needed for discomfort and to try to prevent the hernia enlarging or bowel strangulation. The repair of this hernia will be a major surgical procedure also requiring inpatient hospitalization.
>
> I continue to follow him for this hernia. He will not be able to do any physical work until it is repaired and he recovers and may never be able to given then [sic] physical deterioration that has occurred since his initial illness.

(Tr. 267).

On July 24, 2017, Dr. Monk asserted Smith could not do any heavy lifting, repeated bending, or standing for long periods of time due to his hernia. (Tr. 290, 332).

On January 17, 2018, Smith desired to talk with Dr. Monk again about doing surgery because he obtained financial assistance.  (Tr. 284, 325).   On January 23, 2018, an abdominal and pelvic tomography depicted a large hernia in Smith's lower left abdominal wall.  (Tr. 487).

On February 13, 2018, Dr. Monk discussed with Smith her plan to perform an incisional hernia repair.  (Tr. 254, 281, 322, 479).   On February 26, 2018, Smith underwent the incisional hernia repair and "was . . . transferred to the recovery room in stable condition."  (Tr. 259, 261–62, 483, 485–86).  Dr. Monk noted Smith experienced an uneventful postoperative course, his pain "was controlled with intravenous medications," and "[h]is wound was stable."  (Tr. 259, 483).  The hospital discharged Smith on March 2, 2018.  (*Id.*).  Upon discharge, Smith received instruction not to lift anything greater than ten pounds, and prescriptions for a Norco and Ibuprofen.  (Tr. 263).

Between March and April 2018, Smith had four postoperative visits with Dr. Monk.  (Tr. 268–276, 308).  On the first visit, Smith described his experience with soreness, but overall he did well.  (Tr. 274, 311).  Dr. Monk limited Smith to no lifting over ten pounds.  (Tr. 276, 311).  At the second visit, Smith still exhibited soreness and wore an abdominal binder, but he had been doing well.  (Tr. 271, 310).  Dr. Monk wanted Smith to take small breaks from wearing the binder to help improve muscle tone.  (Tr. 273, 310).  During the third visit, Smith stated he still experienced some intermittent pain, but he otherwise had been doing well.  (Tr. 268, 309).  Dr. Monk

18

commented that Smith's incision had healed well, and he displayed a stable postoperative condition. (Tr. 269, 309). On the fourth visit, Smith stated he still suffered some abdominal pain, but he generally felt better. (Tr. 308). Dr. Monk reported Smith's incision healed well, yet he did exhibit "laxity of [the] left abdominal wall" though with no hernias. (*Id.*).

On May 17, 2018, Smith stated he still needed to wear his abdominal binder due to his abdomen bulging again. (Tr. 294, 307). Dr. Monk found Smith exhibited a stable postoperative condition and no palpable hernia, but Smith's left abdominal wall protruded more than the right due to muscle laxity. (*Id.*). Smith received permission to "increase activity as tolerated," and he should no lift no more than 50 pounds. (*Id.*). Dr. Monk also encouraged Smith to start light exercise. (*Id.*).

On May 31, 2018, Smith underwent a consultative examination with Alvin Tenchavez, M.D. (Tr. 298, 301). Smith explained to Dr. Tenchavez that he applied for disability benefits based on his reoccurring hernias, back pain, and knee pain. (Tr. 298). Smith admitted to not having any "diagnostic workup" or therapeutic intervention for either his back or knee pain. (*Id.*). Dr. Tenchavez performed a physical exam on Smith and found he exhibited a body mass index ("BMI") of 34. (Tr. 300). Smith also had a scar on the left side of his abdomen, but he noted Smith exhibited no tenderness and no organomegaly or masses. (*Id.*).

During the neuromuscular portion of the exam, Smith showed he could heel walk, toe walk, tandem walk, and ambulate without any assistive devices. (*Id.*). Dr.

Tenchavez also found Smith could "stoop and rise on the knees." (*Id.*).  During the exam, Smith tested negative on his straight leg raising test while in the sitting and supine position.  (*Id.*).  In addition, Smith exhibited a normal range of motion in his cervical spine, dorsiflexion spine, hips, knees, ankles, shoulders, elbows, forearms, and wrists. (Tr. 302–03).  Dr. Tenchavez also found that Smith demonstrated maximum grip strength and could handle small objects.  (*Id.*).  Dr. Tenchavez also conducted an x-ray of Smith's left knee and back.  (Tr. 301).  He found Smith had osteoarthritis in his knee and suffered minimal degenerative disc disease in his thoracic spine.  (*Id.*).

In July 2019, personnel at Sardis City Medical Center stated Smith suffered obesity and had an abdominal scar, but he exhibited no abdominal tenderness, hepatic enlargement, spleen enlargement, or transient weakness.  (Tr. 447–51).  Smith received counseling to increase his activity.  (Tr. 452).  Then in August 2019, personnel from Sardis reported Smith still suffered from obesity and had a large hernia on the left side of his abdomen, abdominal tenderness, and left knee arthritis.  (Tr. 455, 459).  Smith received counseling about engaging in a weight loss diet.  (Tr. 460–61).

The record portrays Smith suffers from reoccurring hernias and has undergone multiple surgeries to treat them.  Since his last surgery, Smith has suffered another hernia that has gone untreated.  The medical evidence demonstrates Smith's hernias cause him pain which exacerbates with prolonged standing or lifting.  Accordingly, Dr. Monk repeatedly limited Smith from engaging in heavy lifting, bending over repeatedly, or standing for long periods of time.  The ALJ considered these symptoms and found

Smith could perform limited sedentary work.  The medical evidence supports such a finding because Smith manifests a normal range of motion in his extremities, maximum grip strength, and could ambulate without an assistive device and handle small objects. In addition, Smith stated watching television, sitting on his porch, taking personal care of himself, preparing simple meals, doing laundry, and driving comprise a part of his daily activities.

Smith cites *Ellenburg v. Comm'r of Soc. Sec. Admin.*, No. 5:16-CV-00360-JHE, 2017 WL 4019430 (N.D. Ala. Sept. 12, 2017), for the contention that "[t]he ALJ's apparent conclusion that [his] hernia issues have been resolved is not supported by substantial evidence."  (Doc. 16 at 16).   In *Ellenburg*, the court reversed the Commissioner's decision denying Ellenburg benefits and remanded the action so an ALJ could reevaluate Ellenburg's abdominal pain.  2017 WL 4019430, at *6.  There, the court stated:

> Ellenburg underwent his fourth hernia surgery on December 3, 2013. . . . After reporting incisional pain at his December 17, 2013 post-operative appointment, on January 27, 2014, Ellenburg reported the incisional pain was "mild and resolved," as the ALJ note[d]. . . . However, absent from the ALJ's opinion [was] Dr. Buckner's January 27, 2014 note: "still with . . . lower left quadrant abdominal pain, muscular." . . . The ALJ also failed to note that on March 19, 2014, at a visit with Dr. Walker, Ellenburg reported residual pain in his left side and that he was not getting a lot of relief from his medication. . . .
>
> The ALJ's conclusion that "after the final hernia surgery, Ellenburg only complained of mild incisional pain," . . . [was] not supported by substantial evidence. There [was] record evidence showing that Ellenburg complained to two different doctors that he continued to have abdominal pain, specifically in the left lower quadrant, after his fourth hernia surgery and that he did not get a lot of relief from his medication. . . . The ALJ's inference that Ellenburg's

symptoms must not have been as limited as he alleged since he continued to smoke despite doctor's telling him he needed to quit to reduce the risk of recurrent hernias, [did] not cure th[e] deficiency. . . . On remand, the ALJ needs to consider this evidence of continued [lower left quadrant] abdominal pain after the fourth hernia surgery.

2017 WL 4019430, at *4 (internal alterations omitted). Thus, Smith contends "the ALJ [here] should [be] directed to further consider [his] continuing hernia pain and his substantial risk of injury."

The court disagrees with Smith's contention. The *Ellenburg* decision rested upon the ALJ's failure to discuss two treatment records noting the claimants' continued experience of pain following his hernia surgery. In this action, the ALJ considered all of the relevant medical evidence. The ALJ acknowledged Smith had his final hernia repair in February 2018, and his report of experiencing intermittent pain during a postoperative visit. (Tr. 21). Thereafter, the ALJ highlights another physical exam in August 2019, in which Smith exhibited a left sided incisional hernia and abdominal tenderness. (*Id.*). Smith does not point to any other specific medical evidence or symptom the ALJ failed to consider. Furthermore, the ALJ concluded Smith's "pain and inability to lift heavy weighs in order to not exacerbate his abdominal muscle walls, as well as his . . . large left sided hernia are accommodated by the limitation of sedentary work." (Tr. 23). Thus, the court finds the ALJ properly considered Smith's continuing hernia pain and risk of injury.

The record further demonstrates Dr. Tenchavez diagnosed Smith with minimal back degenerative disc disease, however, Smith has not sought any treatment for this

issue.  Furthermore, Dr. Tenchavez and the personnel at Sardis found Smith suffers from osteoarthritis in his knees.  Yet, the records portray Smith only received a one-time prescription for over-the-counter Motrin to treat his knee pain in December 2014.  Medical records also show that Smith has been diagnosed with obesity, but again, no significant treatment has been recommended for this issue.

Lastly, Smith claims "the ALJ erred in not finding [him] to be disabled based on a combination of his sever impairments." (Doc. 16 at 18).  "When a claimant has multiple impairments they must be considered in combination." *Dunn v. Astrue*, 660 F. Supp. 2d 1290, 1294 (N.D. Ala. 2009) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984)).  As explained previously, the ALJ found Smith manifested the severe impairments of "back degenerative disc disease, bilateral knee osteoarthritis/degenerative joint disease, a large left side abdominal hernia, and obesity . . . ." (Tr. 17).  The ALJ concluded Smith did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 19).  Then, the ALJ concluded the explanation for his RFC assessment as follows:

> After considering the evidence of record, I find that the above residual functional capacity limiting the claimant to sedentary exertional work adequately accommodates his severe impairments. Specifically, his severe physical impairments and arising symptoms, including pain and inability to lift heavy weight in order to not exacerbate his abdominal muscle walls, as well as his back degenerative disc disease, bilateral knee osteoarthritis/degenerative joint disease, large left sided abdominal hernia, and morbid obesity, are accommodated by the limitation of sedentary work. The postural and environmental limitations are further supported by his history of perforated diverticulitis with multiple

intrabdominal abscess requiring colectomy and reversals, several abdominal wall hernias requiring surgical intervention, bilateral knee osteoarthritis/degenerative joint disease, the clinical entries documenting pain, crepitus, and limited range of motion of the bilateral knees, morbid obesity, fluctuations of blood pressure, and any possible side effects from the use of his hypertension medication Lisinopril.

(*Id.*).

Therefore, the ALJ considered all symptoms Smith manifested and the extent to which those symptoms corresponded with the evidence in the record.   Thus, the court concludes the ALJ considered the combined effects of Smith's impairments.  *See Scott v. Colvin*, 652 F. App'x 778, 781 (11th Cir. 2016) (The "ALJ explicitly stated [plaintiff's] combined impairments . . . did not amount to a listed impairment and made specific, articulated findings as to the effect of the combination of [plaintiff's] impairments. Such a statement constitutes evidence that the ALJ considered the combined effects of [plaintiff's] impairments and discussed their cumulative effect." (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam))).

In sum, the ALJ offered adequate explanations for discounting Smith's testimony as to his pain.  Further, the ALJ properly cited objective medical evidence refuting the severity of Smith's alleged symptoms, and Smith has not offered any argument or pointed to any facts undermining the substantial evidence supporting the ALJ's RFC assessment.  Although Smith maintains his pain limits him to a greater degree than what the ALJ assessed, the court cannot reweigh the evidence or second-guess the ALJ's conclusions.  *See Winschel*, 631 F.3d at 1178 (citations omitted).  Thus, the ALJ did not

err in assessing Smith's pain allegations or RFC.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 30th day of March, 2022.

_____

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE